1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOERSCH & ILLOVSKY LLP
Matthew C. Dirkes (State Bar No. 255215)
matt@boersch-illovsky.com
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorney for Defendant
KHARI MOORE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

KHARI MOORE,

Defendant.

Case No.: 20-cr-369-SI

**DEFENDANT KHARI MOORE'S
SENTENCING MEMORANDUM**

Defendant Khari Moore submits this memorandum for the Court's consideration in connection with his upcoming sentencing. Mr. Moore agrees with the guidelines calculation and criminal history computation in his Presentence Investigation Report. ECF No. 102. He recognizes that he faces a mandatory sentence of seven years as a result of his guilty plea to Count II, 18 U.S.C. § 924(c). In addition, Mr. Moore has admitted to being part of a conspiracy to distribute marijuana, (Count II, 21 U.S.C. §§ 846, 841), which, with Mr. Moore's criminal history category level of I, carries with it a guidelines range of 0-6 months. Mr. Moore respectfully suggests that a guidelines sentence of seven years adequately punishes him for his conduct in this case. No interests of society (or justice) would be furthered by a longer prison sentence.

## I.      CHARACTERISTICS OF MR. MOORE

Mr. Moore, now 23 years old, grew up in Stockton. PSR ¶ 43. His childhood was steeped in poverty, instability, trauma, and violence. His biological father was (and still is) absent from his life. *Id.* ¶¶ 43-44. His mother raised him on her own until he was five, when she became involved with his stepfather, with whom Mr. Moore has never been close. *Id.* ¶ 44. The family, which included several siblings, struggled financially and moved frequently. *Id.* ¶ 44. As a child, Mr. Moore never spent more than two years at the same school. *Ibid.* He and his siblings were bullied at school because his family could not afford new clothes for them. *Ibid.* He had few friends outside of his brothers. *Ibid.* The family lived in crime-plagued neighborhoods. *Ibid.* When he was ten years old, local drug dealers would make him fight other children for money. *Id.* ¶ 45.

He and his family experienced firsthand the devastating consequences of gun violence. His cousin was killed when Mr. Moore was 13. *Ibid.* His brother Kevin was killed several years later. *Ibid.* He was close with both his cousin and his brother and their deaths deeply scarred him. *Ibid.* Another brother, Jalique, was shot when Mr. Moore was 15 years old. *Ibid.* Mr. Moore began using marijuana to cope with the stress and anxiety caused by the trauma. *Ibid.*

Three years ago, Mr. Moore himself was shot in the chest by an unknown assailant as he left a barber shop. *Id.* ¶ 50. His left lung was removed as a result of the injury and his left shoulder still contains bullet fragments that the doctors were unable to remove. *Ibid.* The loss of his lung has

DEFENDANT KHARI MOORE'S
SENTENCING MEMORANDUM
Case No.: 20-cr-369-SI

exacerbated the severe asthma he has suffered since childhood. *Ibid.* Not surprisingly, the gun violence has left him with Post-Traumatic Stress Disorder, fearful for his own safety, and often unable to sleep. *Id.* ¶¶ 50-52 & Sentencing Recommendation at 2. He has requested mental health treatment numerous times during his pretrial detention but has been provided none. *Id.* ¶ 52.

Despite the hardships and violence Mr. Moore experienced growing up, he largely steered clear of the pitfalls that can easily swallow those in similar circumstances. Although he's been arrested several times, his criminal history score is zero and he's never spent any time in prison. *Id.* ¶ 37. He largely avoids alcohol and other drugs and uses marijuana to help him sleep and relieve the chronic pain in his arm from the gunshot wound. He has a one-year old daughter whom he loves and with whom he speaks as often as possible since he's been incarcerated. *Id*. ¶ 46.

He has a mother with whom he has always been close and who continues to love and support him despite the instant offenses. *Id.* ¶ 47. She was "astonished" to learn of his arrest and believes the conduct is out of character for him. *Ibid.* She also believes that Mr. Moore will "get back on track" after being released from prison, when he will be focused on obtaining employment and caring for his daughter, who lives with and is cared for by Mr. Moore's mother. *Ibid.*

## II.     NATURE OF THE OFFENSE

Mr. Moore agrees with the government's characterization of the events at issue: "a drug deal gone horribly wrong." ECF No. 107 at 4. In April 2018, Mr. Moore and his codefendant traveled from Stockton to purchase marijuana from sellers Mr. Moore found on the internet. ECF No. 93 ¶ 2 (plea agreement). Mr. Moore and his codefendant sat in the back seats of the sellers' pickup truck while the sellers sat in the front. Mr. Moore had a gun with him, as did the driver of the truck. *Id.* The deal quickly descended into chaos and the men exchanged gunshots.[1] Tragically, Mr. Moore's shots struck the driver. Luckily for Mr. Moore and his codefendant, the driver's shots missed. Mr.

---

[1] A crime scene report by the Redwood City Police Department dated April 10, 2018, and a ballistics report prepared by Forensic Alchemy relying on that police report, both concluded that at least two small-caliber rounds traveled from the front seat towards Mr. Moore and his codefendant in the back seat. The driver admitted he had a small-caliber .22 pistol. A copy of the ballistics report is attached as Exhibit A.

DEFENDANT KHARI MOORE'S
                                                           SENTENCING MEMORANDUM
                                                           Case No.: 20-cr-369-SI

Moore and his codefendant fled.  They did not take the bags of marijuana, refuting the sellers' claims that Mr. Moore and his codefendant intended to steal the drugs.

### III.     A SUFFICIENT AND FAIR SENTENCE

A sentence must be "not greater than necessary" to "provide just punishment," deter criminal behavior, and protect society.  18 U.S.C. § 3553(a).  Mr. Moore has pleaded guilty to a charge (Count II, 18 U.S.C. § 924(c)(1)(A)(ii)) that carries with it a mandatory term of seven years, a punishment he accepts in light of the conduct at issue.  He is deeply remorseful for the pain he has caused the driver and the driver's family, something he will carry with him during his lengthy prison term.

As to the sentence on Count I (21 U.S.C. §§ 846, 841), Mr. Moore's guidelines, given his criminal history, are 0-6 months.[2]  Mr. Moore respectfully submits that a guidelines sentence of probation on that Count, combined with seven years on Count II, would be sufficient and not greater than necessary to satisfy the goals of § 3553.

A low-end guidelines sentence on Count I would be justified by a number of factors.  As noted above, Mr. Moore's criminal history score is zero.  He's never been convicted of a crime nor served any time in prison.  In addition, the circumstances of Mr. Moore's life, described above, mitigate towards a lower sentence.  Mr. Moore appreciates the government's acknowledgement of such.  ECF No. 107 at 5 ("The government also notes the mitigating factors present in this case – specifically the defendant's difficult upbringing, the fact that he has had multiple family members die from gun violence, and that he himself has been shot . . . .").

The Probation Office has also recognized Mr. Moore's traumatic childhood, noting that he "had a difficult and unstable childhood, and experienced numerous traumatic events, including the loss of family members," and "was the victim of a shooting in 2018, which resulted in the loss of one of his lungs and symptoms of paranoia, PTSD, and anxiety."  PSR, Sentencing Recommendation, at 2.  Mr. Moore's lack of any criminal history and his early and frequent exposure to poverty, violence,

---

[2] As noted in the stipulation recently filed by the government and Mr. Moore, ECF No. 105, the guidelines calculation in Mr. Moore's plea agreement, ECF No. 93, incorrectly included two separate two-level enhancements.  ECF No. 93 ¶ 7.b. & c.  The PSR contains the correct guidelines calculation, ECF No. 102 ¶¶ 24-32, and the parties agree that Mr. Moore's guidelines for Count I are 0-6 months.

DEFENDANT KHARI MOORE'S
SENTENCING MEMORANDUM
Case No.: 20-cr-369-SI

and trauma weigh in favor of a low-end guidelines sentence of probation on Count I.

In arguing for a six-month sentence on Count I, the government states that "[w]hile others may have been culpable, the defendant deserves a longer sentence than his codefendant and the sellers or supplier of marijuana."  ECF No. 107 at 5.  The seller and supplier were convicted of one and two counts, respectively, of the same offense charged in Count I for Mr. Moore, 21 U.S.C. §§ 846, 841.  *United States v. Castillo*, CR-19-00626 SI, ECF Nos. 58, 78 (N.D. Cal.).  The supplier provided the gun that was brought to and used during the transaction.  *Id.*, ECF No. 48.  The seller attempted to hide the gun from the police after the shootings.  *Id.*, ECF No. 72.  The government declined to make specific sentencing recommendations for either individual.  Ultimately, neither the seller nor the supplier received any time in prison as part of their sentences.  The driver, who was part of the seller/supplier conspiracy and possessed and fired the gun during the transaction, was not charged.  In light of those sentences, seven years in prison for Mr. Moore would more than satisfy the government's stated concern of imposing a longer sentence on Mr. Moore than anyone else involved in the transaction.

A total sentence of seven years for Mr. Moore would be sufficient but not greater than necessary to provide just punishment in this case.  An additional six months, on top of seven years, would serve no legitimate sentencing goal or objective.

## CONCLUSION

For the reasons stated, defendant Khari Moore respectfully requests that the Court sentence him to a total term of imprisonment of seven years.

Dated:  October 18, 2021

BOERSCH & ILLOVSKY LLP

 */s/Matthew Dirkes*
Matthew Dirkes

Attorney for Defendant
Khari Moore

DEFENDANT KHARI MOORE'S
SENTENCING MEMORANDUM
Case No.: 20-cr-369-SI

# EXHIBIT
# A



**FORENSIC ALCHEMY**
Consulting & Expert Witness Services
In Forensic Science

**TO:**    Kathryn Ross
Attorney at Law
1611 Telegraph Avenue #806
Oakland, CA  94612

**Laboratory Report**

Report Date:  May 27, 2021
Page 1 of 9

**Case Name:**    **MOORE, Khari**
**Type of Case:**    Firearms

**Evidence Submitted/Indicated Source:**
Electronic discovery materials including, but not limited to, police reports, scene photographs, surveillance videos, photographs of evidence items and forensic laboratory reports.

**Purpose of Examination:**
Shooting incident reconstruction

**Results/Conclusions:**
Based on a review of the materials, it is apparent that there were at least three different guns at this scene.  At least two of these guns, and potentially all three were fired at the scene.
This includes two different large caliber guns and one small caliber gun.
The specific discovery materials that served as a basis for this report are referenced and described in detail below:

a)  Five Remington Peters .45 caliber cartridge cases were found inside the vehicle and one Winchester Western .45 caliber cartridge case was found outside the vehicle on the ground.  A report dated 01/02/2019 by the San Mateo County Sheriff's Forensic Laboratory concludes that all of these cartridge cases were fired in the same gun.  I concur, based on a review of the examination notes and photographs provided with the report.

b)  What was described in the crime scene report as a .45 caliber bullet[1] (Item MEM39, found in the driver's door) is marked with lands and grooves as a result of having been fired in a gun with **conventional rifling** in the barrel.

A .45 caliber projectile would be described as a "large caliber".



Image US-001451 (enlarged).  Item MEM39

---

[1] Redwood City Police Department crime scene report dated 04/10/2018 (page 6 & 8), Melissa Mondragon

c) A projectile jacket (designated as Item MEM27) exhibiting **polygonal rifling** was found at the scene under Ryan Murphy's triaged clothing. This is a different type of ammunition and was fired in a different gun than the projectile shown in Item b) above. No information is provided regarding the caliber of this projectile, however based on its appearance, it would **not** be described as a "small caliber".



Image US-001431 (enlarged). Item MEM27

d) In the Redwood City Police Department crime scene report dated 04/10/2018 (page 6), Melissa Mondragon states the following:

"Based upon the approximate angle of impact, it appears the flight path of a small caliber round traveled along the longitudinal axis with a vertical angle of -7 degrees and a horizontal angle of 32 degrees. The bullet perforated the intermediate target, entering the interior rear driver's door arm rest (MEM12A), impacting the second intermediate target, the interior metal framing (MEM12A1) and exiting the rear driver's door (MEM5A), then came into contact with the third intermediate target, the rear driver's door handle. No final terminus identified."

I have reviewed the photographs and concur with this trajectory determination. This projectile is traveling from the front of the vehicle cabin towards the back, from the passenger side towards the driver's side, and downwards.



Image US1183



Image US-001186.  In this photograph, the projectile is traveling from the right of the frame towards the left, entering the arm rest of the rear door on the interior driver's side of the vehicle.

e)    There are two additional bullet paths described in the crime scene report by Melissa Mondragon[2] that follow similar trajectories from front to back, passenger side towards driver's side and slightly downwards (labelled in the report as MEM13 and MEM14 respectively).  After reviewing the photographs provided, I concur with Ms. Mondragon's determination of the trajectories.

One of these trajectories impacts the soft plastic frame of the rear door on the interior driver's side nearest the B-pillar.  The other trajectory passes through the hand grip affixed to the B-pillar on the driver's side, travelling from front to back, passenger side towards driver's side, and downwards.

---

[2] Redwood City Police Department crime scene report dated 04/10/2018 (pages 3, 6 & 7), Melissa Mondragon



Image US-001213, showing the bullet impact in the plastic frame of the rear passenger door on the interior driver's side.  In this image, the projectile is travelling from right to left.



Image US-001218, showing a bullet trajectory passing through the hand grip on the interior driver's side. In this image the projectile is travelling from right to left.

f) A .22 caliber Beretta semi-automatic pistol with apparent bloodstains on it, was found in the bushes at the scene.  The presence of blood suggests this gun may have been in the possession or proximity of Ryan Murphy.

The examination notes accompanying the report dated 01/02/2019 by the San Mateo County Sheriff's Forensic Lab show that this gun misfired during the test-firing process due to an apparent failure of the firing pin to strike the ammunition primer with sufficient force to discharge it.[3]

A .22 caliber projectile would be described as a "small caliber".



Image US-001107.  Item MEM8, the .22 caliber semi-auto pistol found in the bushes at the scene.

---

[3] San Mateo County Sheriff's Forensic Laboratory Firearm Worksheet dated 01/02/2019

**Disposition of Evidence:**

Materials submitted for review will be retained in the case folder for three years unless otherwise requested in writing.

**Report by:**

_____

Celia Hartnett

Forensic Science Consultant